[Civ. No. 7453. Third Dist. Mar. 3, 1948.]

UNION BANK AND TRUST COMPANY OF LOS ANGELES, as Trustee, Respondent, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Appellant.

Fred N. Howser, Attorney General, James E. Sabine and Irving H. Perluss, Deputy Attorneys General, for Appellant.

Dempsey, Thayer, Deibert & Kumler for Respondent.

THOMPSON, J.—The State Treasurer has appealed from a judgment for plaintiff, refunding income taxes levied against a trustee of an express trust under the Personal Income Tax Act of 1935 (Stats. 1935, p. 1090, ch. 329; 3 Deering's Gen. Laws, Act 8494; Rev. & Tax. Code, §§ 17001, et seq.), which were paid under protest. Defendant filed a general demurrer to the complaint. The demurrer was overruled and defendant was granted 15 days to answer. He failed to answer the complaint. Upon motion of plaintiff the defendant's default was duly entered and judgment was rendered against him for the sum of $6,042.71, being the amount of income taxes which were paid by plaintiff under protest. From that judgment this appeal was perfected.

The complaint alleges that on June 28, 1935, Alice B. Keck executed an express trust agreement, conveying to plaintiff as trustee designated property including certain shares of the capital stock of The Limited Oil Company, for the benefit of her five named children. She then owed that company $127,324.21 Article VI of the trust agreement reads:

"Upon the death of the Trustor, unless this trust is theretofore revoked in a manner hereinafter provided, after making payments then due under paragraphs (a) and (b) of Article III hereof, the Trustee shall from the accumulated net income or corpus of the said trust, pay any balance then remaining unpaid to said The Limited Oil Company upon the indebtedness of Trustor referred to in Section 2 of Article II of the 'Keck Agreement', and pay any balance then remaining unpaid for any advancement made by W. M. Keck under Section 4 of Article II of the 'Keck Agreement', and the remaining corpus of the trust, together with any accumulated income remaining after paying the taxes provided for in Section 7 of Article I of the 'Keck Agreement' (which said taxes and charges said Trustee is hereby authorized and directed to pay), shall go to and be by the Trustee conveyed, share and share alike, to W. M. Keck, Jr., Howard Brighton Keck, Willametta Myron Keck, Alice Bertha Keck, and Theodore James Keck."

The complaint further alleges that the trustor died August 16, 1936; that subsequent to her death, on October 15, 1936, the trustee received as dividends from said Oil Company stock the sum of $62,500, of which payment it promptly notified the beneficiaries, who "thereupon severally directed the trustee to apply the said dividend against the indebtedness of the trustor to The Limited Oil Company," which the trustee, *pursuant to said direction by the beneficiaries,* did in 1936; that the trustee reported, in 1936, to the Franchise Tax Commissioner the death of the trustor, the vesting of the estate in the beneficiaries, and the application of said sum of $62,500, at the request of the beneficiaries, to said debt to the Oil Company; that the beneficiaries promptly reported to the said Tax Commissioner the receipt of funds, including said sum, "and paid a tax thereon [for the year 1936] *computed in the manner provided by law;"* that the commissioner nevertheless imposed an income tax thereon for the year 1936, *against plaintiff as trustee,* in the further sum of $6,042.71, which was paid by plaintiff October 31, 1938, under protest. This suit was then instituted for the refunding of said sum, as previously stated.

In his opening brief the appellant states that the question on appeal is "Whether a trust or the beneficiaries of the trust are taxable upon income received by the trust and used to discharge an obligation of the trust during the taxable year 1936?"

The real problem is whether the complaint states a cause of action for refunding taxes paid under protest. Incidentally, the question is presented as to whether the property in question vested in the beneficiaries "upon the death of the trustor." The determination of that question depends upon the construction of the trust agreement. The dividends received after the death of the trustor, in the sum of $62,500, were actually applied on the debt due to the oil company, *by direction of the beneficiaries*. █ In support of its contention that the property vested in the beneficiaries upon the death of the trustor, the plaintiff quotes the essential language of article VI of the trust agreement as follows:

"Upon the death of the trustor . . . the Trustee shall *from the accumulated net income or corpus* of the said trust, pay any balance then remaining unpaid to said The Limited Oil Company . . . and the *remaining* corpus of the trust, together with any accumulated income *remaining* . . . shall go to and be by the Trustee conveyed, share and share alike," to five named beneficiaries.

The respondent construes that language to mean: That the trust agreement places no restriction on the vesting of the current income accruing after the death of the trustor; that the dividends vested in the beneficiaries at her death; that the debt mentioned therein is to be paid from the corpus and the income accumulated before the death.

That is a reasonable construction of the language. It refutes the suggestion of appellant that the trustor contemplated an accumulation of income after her death. It states, in effect, that, *at the death* of the trustor the balance of the debt to the oil company shall be paid "from the accumulated net income or corpus" then existing, and that the *remaining* income and corpus shall go to and be by the trustee conveyed to the beneficiaries. That means that the income of $62,500 paid as dividends on the oil stock *after the death of the trustor* was not to be resorted to for payment of the balance due on the debt, but was to become the property of the beneficiaries. That is the exact construction placed upon the language of the trust by both the trustee and the beneficiaries. It is immaterial that said sum of money, by subsequent specific direction of the several beneficiaries, was paid on that debt. The trustee did so as the agent of the individual beneficiaries, and not as trustee.

In support of his assertion that a trust will not be terminated until the purpose for which the trust was created has been fully performed, the appellant cites *District Landowners' Trust* v. *Doherty*, 94 Colo. 385 [30 P.2d 319], *William* v. *Morris*, 144 Ore. 620 [25 P.2d 135], 2 Restatement of the Law of Trusts, p. 1011, § 334, and 3 Scott on Trusts, p. 1823, § 334. But that principle does not fit the facts of the present case. It is conceded this trust was not created to pay the debt to the oil company. This trust was not extended to cover receipts from dividends which were paid after the death of the trustor, as we have previously held. They were not a part of the trust.

The appellant claims that even though the dividends in question, which were acquired after the death of the trustor, vested in the beneficiaries, they were nevertheless not "currently distributable," within the meaning of section 12(c) of the California Personal Income Tax Act, and taxable to the trustee as determined by the Circuit Court of Appeals in *Commissioner of Internal Revenue* v. *First Trust & Deposit Co.*, 118 F.2d 449. That case involved the creation of a trust as applied to section 162(b) of the Federal Revenue Acts of 1932 and 1934, which appellant asserts are the counterparts of section 12(c)(2) of the California Income Tax Act. In that case the trustor conveyed to the trustee certain securities and life insurance policies, with direction to collect the income therefrom and pay the premiums as they became due, together with the expenses of administering the trust, and to apply the net income to the use of the grantor during his life, and upon his death to that of his wife. It was provided that upon her death, "the capital of the trust" should be divided and conveyed in equal shares to the children of the trustor. But the court said that "The grantor of the trust *by its terms* reserved the right to charge the beneficiaries, so that the corpus was subject to estate taxes upon his death." The Commissioner of Internal Revenue levied taxes against the beneficiaries for the years 1933, 1934 and 1935. That levy was not sustained. It does not appear when the trustor died, or when his wife died. But that case was decided upon the statement of the court that *"Under the terms of the trust deed* the gift to the children, which became vested on the death of their parents, *was subject to the payment of taxes, commissions and expenses incident to the winding up of the trust."* (Italics added.)

The foregoing-quoted language distinguishes that case from the present one as we have previously indicated. Other cases cited by the appellant upon that question are likewise similarly distinguished. █ It is, of course, the duty of the trustee to carry out the terms of the trust according to the expressed intent of the trustor. (54 Am.Jur., § 305, p. 242.)

The respondent suggests that if it be assumed the conveyance of the property in question to the beneficiaries is deemed to be suspended for an uncertain period of time, during which the income may accumulate, the trust would become invalid, to that extent, under sections 715 and 725 of the Civil Code, because the power of alienation would thereby be suspended beyond the lives of persons in being and 25 years. That may be questionable, since the trust in this case directs the payment of the debt in question from the *corpus* as well as from the accumulated income. When the payment of a debt is directed to be made from the *corpus* of an estate, that may authorize the sale of the property to pay the debt and thus prevent the suspension of the right to alienate the property beyond the prohibited time of lives in being and 25 years. But it is not necessary for us to determine that question, in view of our conclusion that the dividends in question vested in the beneficiaries.

█ Independently of the question of the vesting in the beneficiaries of the stock dividends received after the death of the trustor, there appears to be another reason for holding that the complaint states a valid cause of action for the refunding of taxes paid by the trustee under protest. The complaint alleges that the beneficiaries paid upon said taxes for the year 1936 "his or her share of the said $72,561.99" which included taxes on said dividends received after the death of the trustor, in the sum of $62,500. It is alleged that they "paid a tax thereon *computed in the manner provided by law.*" The complaint also alleges that plaintiff was compelled to and did pay the defendant under protest an additional sum of said taxes for 1936 of $6,042.71, which was illegally collected, and which it seeks to recover. It is immaterial that the original payment of said taxes was made by the beneficiaries. According to the complaint they were accepted and retained by the defendant. Even though that payment may have been inadequate to cover the entire amount legally due, it should be credited to the obligation. It follows that, under the uncontradicted allegations of the complaint,

plaintiff was forced to pay an additional amount far in excess of the taxes due to the state. The plaintiff would be entitled to recover in this action that excess sum which was paid under protest, regardless of whether the dividends in question vested in the beneficiaries. To that extent, at least, under any circumstances, the complaint does state a cause of action. If the defendant desired to raise the issue as to whether or not the original payment of taxes by the beneficiaries was adequate to cover the entire amount of taxes due for that year, he should have done so by filing an answer to the complaint within the time allowed by the trial court. He failed to do so. For the defendant to retain such grossly excessive amount of taxes would result in undue and illegal enrichment.

We conclude that the complaint states a valid cause of action for the refunding of taxes paid under protest.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 2, 1948.